**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS - HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| **LARHONDA BIGGLES, as ADMINISTRATRIX OF THE ESTATE OF JAQUAREE SIMMONS** | : : : : | |
| **Plaintiff,** | : : | **Civil Action No. 4:22-cv-03326** |
| **v.** | : : | **JURY TRIAL DEMANDED** |
| **HARRIS COUNTY, TEXAS** | : : | |
| **AND** | : : | |
| **JOHN DOE DETENTION GUARDS 1-10** | : : | |
| **AND** | : : | |
| **DETENTION OFFICER GARLAND BARRETT** | : : | |
| **AND** | : : | |
| **DETENTION OFFICER PATRICIA BRUMMETT** | : : : | |
| **AND** | : : | |
| **DETENTION OFFICER JOSHUA DIXON** | : : | |
| **AND** | : : | |
| **DETENTION OFFICER ALYSHEIA MALLETY** | : : | |
| **AND** | : : | |
| **DETENTION OFFICER ISRAEL MARTINEZ** | : : | |
| **AND** | : : | |
| **DETENTION OFFICER ERIC MORALES** | : : | |
| **AND** | : : | |
| **DETENTION OFFICER ALFREDO RODRIGUEZ** | : : : | |
| **AND** | : : | |
| **DETENTION OFFICER DANIEL RODRIGUEZ** | : | |

AND                                          :
                                             :
**DETENTION OFFICER CHADWICK**               :
**WESTMORELAND**                             :
                                             :
AND                                          :
                                             :
**DETENTION OFFICER ANTONIO BARRERA**        :
                                             :
AND                                          :
                                             :
**DETENTION OFFICER JEREMY**                 :
**MCFARLAND**                                :
                                             :
AND                                          :
                                             :
**DETENTION OFFICER ALEXANDRA**              :
**SAUCIER**                                  :
                                             :
AND                                          :
                                             :
**DETENTION OFFICER RALPH TAMAYO**           :
                                             :
AND                                          :
                                             :
**DEPUTY DANA WALKER**                       :
                                             :
AND                                          :
                                             :
**SGT. BENNY GALINDEZ**                      :
                                             :
AND                                          :
                                             :
**DETENTION SGT. RENE VILLALOBOZ**           :
                                             :
AND                                          :
                                             :
**DETENTION SGT. JACOB RAMIREZ**             :
                                             :
AND                                          :
                                             :
**DR. KELVIN SHEPHARD**                      :
                                             :
AND                                          :
                                             :
**JUANA PATEL, LVN**

_____

**Defendants.**
_____

### FIRST AMENDED CIVIL ACTION COMPLAINT

**NOW COMES** LaRhonda Biggles as duly appointed administrator of the Estate of Jaquaree Simmons, deceased, by and through her chosen counsel John J. Coyle, Esquire of McEldrew Purtell, complaining of Defendants, and in support thereof states the following:

### NATURE OF THE ACTION

1.     On February 10, 2021, Jaquaree Simmons, a healthy 23-year-old man, was arrested and booked into the Harris County Jail. In the morning of February 16, 2021, Mr. Simmons was struck in the face and repeatedly beaten by Defendants. Later that night, Mr. Simmons was again struck in the face multiple times, brutally beaten, lifted up and slammed to the ground of his cell by eleven of the Defendant Detention Officers. He was found unresponsive in his cell the next morning, and taken to the hospital where he was pronounced dead.

### PARTIES

2.     Plaintiff, LaRhonda Biggles, is an adult individual, the mother of Jaquaree Simmons, and the administratrix of his Estate.

3.     Defendants, Garland Barrett, Patricia Brummett, Joshua Dixon, Alysheia Mallety, Isreal Martinez, Eric Morales, Alfredo Rodriguez, Daniel Rodriguez, Chadwick Westmoreland, Antonio Barrera, Jeremy McFarland, Ralph Tamayo, Dana Walker, Benny Galindez, Rene Villaloboz, Jacob Ramirez, and John Doe Detention Guards 1-10 were at all times relevant herein acting under color of state law in the scope and course of their duties as detention officers and/or supervising detention officers with the Harris County Jail. These defendants are being sued in their individual capacity.

4.      Defendant Harris County is a municipality duly organized and existing under the laws of the state of Texas. Defendant Harris County, along with Defendants Harris County Sheriff's Office and Sheriff Ed Gonzales, is responsible for the funding, budget, policies, procedures operation, staffing, training, and oversight of Harris County Jail.

5.      Defendants, Dr. Kelvin Shephard and Juana Patel were at all relevant times herein contractors of Defendants Harris County who provided medical services within Harris County Jail.

## JURISDICTION AND VENUE

6.      Jurisdiction exists in this Honorable Court pursuant to 28 U.S.C. §§ 1331 AND 1343 as this action is brought pursuant to 42 U.S.C. §§ 1983 to redress a deprivation of the Fourteenth Amendment rights of the decedent Jaquaree Simmons. Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. §§ 1367 to adjudicate pendent state law claims.

7.      Venue is proper in this Honorable Court as Defendants' constitutional violations, intentional torts, and otherwise violative conduct occurred within the Southern District of Texas.

## FACTS RELATED TO THE UNLAWFUL KILLING OF JAQUAREE SIMMONS

8.      On February 10, 2021, Jaquaree Simmons was a 23-year-old man in good health when he was arrested for possession of a weapon and booked in the Harris County Jail.

9.      On the morning of February 16, 2021, Jaquaree clogged the toilet in his jail cell with his clothing, causing water to overflow into the cell.

10.     Defendants Barrett, Brummett, Dixon, Mallety, Martinez, Morales, Alfredo Rodriguez, Daniel Rodriguez, Westmoreland, Barrera, McFarland, Tamayo, Walker, Galindez, Villaloboz, Ramirez, and John Doe Detention Guards 1-10 responded to Jaquaree's cell to clean it and proceeded to attack, beat, kick, punch, and strike Jaquaree in the head multiple times, despite the fact Jaquaree posed no threat to the Defendants.

11.    During this attack, Defendants Barrett, Brummett, Dixon, Mallety, Martinez, Morales, Alfredo Rodriguez, Daniel Rodriguez, Westmoreland, Barrera, McFarland, Tamayo, Walker, Galindez, Villaloboz, Ramirez, and John Doe Detention Guards 1-10 watched as their fellow detention officers attacked, beat, kicked, punched, and struck Jaquaree in the head, despite the fact Jaquaree posed no threat to the Defendants.

12.    At no time did Jaquaree assault or threaten any of the corrections officers.

13.    The force used against Jaquaree was unjustified, unreasonable, excessive, and in violation of Jaquaree's Fourteenth Amendment rights.

14.    Defendants Barrett, Brummett, Dixon, Mallety, Martinez, Morales, Alfredo Rodriguez, Daniel Rodriguez, Westmoreland, Barrera, McFarland, Tamayo, Walker, Galindez, Villaloboz, Ramirez, and John Doe Detention Guards 1-10  did not document this use of force, which was a violation of the policies and procedures of Defendant Harris County Sheriff's Office.

15.    Defendants Barrett, Brummett, Dixon, Mallety, Martinez, Morales, Alfredo Rodriguez, Daniel Rodriguez, Westmoreland, Barrera, McFarland, Tamayo, Walker, Galindez, Villaloboz, Ramirez, and John Doe Detention Guards 1-10 proceeded to remove Jaquaree's clothing, his beddings, and all the other belongings from his cell.

16.    Defendants Barrett, Brummett, Dixon, Mallety, Martinez, Morales, Alfredo Rodriguez, Daniel Rodriguez, Westmoreland, Barrera, McFarland, Tamayo, Walker, Galindez, Villaloboz, Ramirez, and John Doe Detention Guards 1-10 left Jaquaree naked in his cell with no clothing after this attack, which was also violation of the policies and procedures of Defendant Harris County Sheriff's Office.

17.    Later on the night of February 16, 2021, Defendant Detention Officer Joshua Dixon attempted to serve Jaquaree his meal tray in his cell.

18.    Jaquaree threw the meal tray back toward Defendant Dixon.

19.     In response, Defendant Dixon punched Jaquaree in the head.

20.     Jacquaree did not threaten or attack any of the corrections officers, nonetheless, Defendants Barrett, Brummett, Dixon, Mallety, Martinez, Morales, Alfredo Rodriguez, Daniel Rodriguez, Westmoreland, Barrera, McFarland, Tamayo, Walker, Galindez, Villaloboz, Ramirez, and John Doe Detention Guards 1-10 then collectively rushed into Jaquaree's cell and attacked Jaquaree for the second time that day, beating, kicking, punching, and striking him in the head multiple times.

21.     During this attack, Defendant Detention Officer Eric Morales picked Jaquaree up and slammed Jaqauree's head onto the floor of his cell.

22.     During this attack, Defendants, Barrett, Brummett, Dixon, Mallety, Martinez, Morales, Alfredo Rodriguez, Daniel Rodriguez, Westmoreland, Barrera, McFarland, Tamayo, Walker, Galindez, Villaloboz, Ramirez, and John Doe Detention Guards 1-10 watched as their fellow detention officers attacked, beat, kicked, punched, struck Jaquaree in the head, and picked him up and slammed him onto the ground, despite the fact Jaquaree posed no threat to the Defendants.

23.     The force used against Jaquaree was unjustified, unreasonable, excessive, and in violation of Jaquaree's Fourthteenth Amendment rights.

24.     Defendants, Barrett, Brummett, Dixon, Mallety, Martinez, Morales, Alfredo Rodriguez, Daniel Rodriguez, Westmoreland, Barrera, McFarland, Tamayo, Walker, Galindez, Villaloboz, Ramirez, and John Doe Detention Guards 1-10  did not document this use of force, which was a violation of the policies and procedures of Defendant Harris County Sheriff's Office.

25.     In fact, Defendants, Barrett, Brummett, Dixon, Mallety, Martinez, Morales, Alfredo Rodriguez, Daniel Rodriguez, Westmoreland, Barrera, McFarland, Tamayo, Walker, Galindez, Villaloboz, Ramirez, and John Doe Detention Guards 1-10  failed to make required visual checks on Jaquaree Simmons, did not make any documentation of their visual checks they did perform,

and did not document the attacks on Jaquaree between the morning of February 15 and the afternoon of February 17, which was a violation of the policies and procedures of Defendant Harris County Sheriff's Office requiring them to make and document visual checks on inmates every 60 minutes and document any use of force.

26.     The second attack left Jaquaree bruised, bloody, and in severe pain.

27.     Jaquaree was then handcuffed and transferred to the Harris County Jail's medical staff for treatment of his injuries sustained in the attack.

28.     Jaquaree was assessed by Defendants John Doe Doctors 1-5 and Defendants John Doe Nurses 1-5.

29.     Defendants Dr. Kelvin Shephard and Juana Patel reported only that Jaquaree had suffered cuts to his left eyebrow and upper lip.

30.     At the time, power was out at the jail because of a winter storm and the X-Ray machine could not be used, instead of transferring Jaquaree to an outside hospital where adequate medical resources and testing existed, Defendants Dr. Shephard and Juana Patel  sent Jaquaree back to his cell without proper medical treatment, only ordering that an X-Ray be taken once power was restored.

31.     The failure to transfer Jacquaree to an outside hospital that could provide the basic medical care that Jaquaree needed was particularly egregious given Jaquaree's obvious and serious medical distress.

32.     Harris County Prison Guards John Does 1-10 never returned Jaquaree to the medical unit for an X-Ray even after power was restored later that night.

33.     Around 8 a.m. on the morning of February 17, 2021, Defendants John Doe Detention Officers 1-2 performed an inmate check on Jaquaree's cell.

34.     During the inmate check, Defendants John Doe Detention Officers 1-2 noticed that Jaquaree's breathing was raspy and labored, and wondered aloud if Jaquaree's breathing was normally like this.

35.     Despite noticing and openly acknowledging Jaquaree's medical distress and breathing issues and being aware of the unfulfilled order to transport him for an X-Ray, Defendants John Doe Detention Officers 1-2 did nothing: they did not alert their supervisors, did not alert jail medical staff, and instead simply left Jaquaree in his cell to continue suffering.

36.     Around noon on February 17, 2021, jail staff found Jaquaree unresponsive in his cell.

37.     Jaquaree was finally transported for medical care and was taken to Lyndon B. Johnson Hospital.

38.     Upon his arrival, hospital staff noted that Jaquaree's jaw was locked shut, he had swelling around his left eye, he had severe facial trauma, his skin was cold and discolored, and his heart had stopped beating.

39.     Because Jaquaree's jaw was locked, hospital staff could not establish an airway allowing him to breathe.

40.     Hospital staff attempted to resuscitate Jaquaree but could not, and Jaquaree was pronounced dead at 1:27 p.m. on February 17, 2021.

41.     Hospital staff ruled Jaquaree's death a homicide.

42.     As a result of their conduct in the vicious attacks that killed Jaquaree, Defendant Ed Gonzalez terminated the employment of Defendants Barrett, Brummett, Dixon, Mallety, Martinez, Morales, Ramirez, Alfredo Rodriguez, Daniel Rodriguez, Walker, and Westmoreland.

43.     Defendant Gonzalez stated in a press release that the actions of the terminated Defendants "betrayed my trust and the trust of our community."

44.     Defendant Gonzalez further stated that the terminated Defendants "abused their authority. Their conduct toward Mr. Simmons was reprehensible. They showed complete disregard for the safety and well-being of a person they were directly responsible for protecting. They escalated, rather than de-escalated, the situation. Their conduct was unacceptable and inexcusable, and has discredited them, the Sheriff's Office, and their fellow employees."

45.     As a further result of their conduct in the vicious attack, Defendant Gonzalez also suspended Defendants Barrera, Galindez, McFarland, Saucier, Tamayo, and Villaloboz.

46.     Defendant Gonzalez stated that all 17 of the Defendant detention officers who were terminated or suspended violated various policies of Defendant Harris County Sheriff's Office, including "excessive force, failure to document use of force, failure to intervene, and making false statements to investigators. Some also violated procedures related to proper monitoring of the physical welfare of people in the jail."

### CUSTOM OF EXCESSIVE FORCE AND DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS AT HARRIS COUNTY JAIL

47.     For more than a decade, Defendants Harris County Sheriff's Office and Harris County have displayed a consistent and systematic failure to properly train and supervise its officers on the proper use of force, techniques and principles of de-escalation, and ensuring the care, safety and health of inmates, resulting in numerous incidents of detention officers unnecessarily using force and deliberately neglecting the health of inmates.

48.     These incidents were well known and subject of federal investigations, media attention and civil lawsuits.

49.     By tolerating the use of excessive force and deliberate neglect of the care, safety and health of inmates as Harris County Jail, Defendants Harris County, Harris County Sheriff's Office, and Ed Gonzalez tolerated such behavior that persisted for two decades prior to Jaquaree's death.

## 2009 DOJ INVESTIGATION INTO HARRIS COUNTY JAIL

50.     In 2009, the United States Department of Justice issued a memorandum outlining the results of an investigation they conducted into repeated violations of inmates' constitutional rights at Harris County Jail.

51.     In that memorandum, the Department of Justice concluded the Harris County Jail "fails to provide detainees with adequate: (1) medical care; (2) mental health care; (3) protection from serious physical harm; and (4) protection from life safety hazards."

52.     The Department of Justice further concluded that the Harris County Jail "lacks: (1) a minimally adequate system for deterring excessive use of force, and (2) an adequate plan for managing a large and sometimes violent detainee population."

53.     As such, the Department of Justice concluded that the Harris County Jail "lacks necessary systems to ensure compliance with constitutional standards."

54.     In the approximately 12 years between the Department of Justice investigation and Jaquaree's death, numerous incidents at Harris County Jail show that Defendants Harris County, Harris County Sheriff's Office, and Defendant Ed Gonzalez have failed to correct the problems outlined in the Department of Justice investigation.

## DETERRIUS GOODWIN

55.     On October 10, 2013, a jail compliance team entered the cell of Deterrius "Terry" Goodwin at Harris County Jail and found he was wearing a filthy, shredded uniform. His sink, toilet and shower were clogged, and Mr. Goodwin had attempted to cover up his own waste with pieces of his uniform.

56.     The compliance team noticed there was a sign outside the door of his cell instructing detention officers not to enter. Trash was littered throughout the cell, and the compliance team determined no one had entered Mr. Goodwin's cell for at least two months.

57.    In a rare instance of accountability, six detention officers were fired and 29 more were suspended for allowing Mr. Goodwin's cell to become essentially uninhabitable.

58.    On June 23, 2015, Harris County settled with Mr. Goodwin for $400,000. However, Harris County and the officers involved did not admit to any wrongdoing.

## KENNETH LUCAS

59.    On February 17, 2015, Kenneth Lucas was an inmate at Harris County Jail when he began experiencing withdrawal systems for his addiction to the medication Xanax, an addiction that jail staff were aware of.

60.    Instead of immediately having Mr. Lucas evaluated by medical staff, five detention officers wearing full riot gear entered his cell, pinned him to the ground, placed him in handcuffs and dragged him on his stomach out of his cell to transport him to the infirmary.

61.    The detention officers ignored Mr. Lucas' repeated pleas that he could not breath and continued to keep him in a "hogtie" position, even after his eyes rolled to the back of his head and his body became lifeless.

62.    Medical staff at Harris County Jail then administered Ativan to Mr. Lucas despite his obviously lifeless body, and Mr. Lucas died.

63.    On March 18, 2019, Defendant Harris County settled with Mr. Lucas' estate for $2.5 million. Harris County did not admit any wrongdoing and none of the officers involved were not disciplined.

## PATRICK GREEN

64.    On March 19, 2015, Patrick Green was an inmate at Harris County Jail and requested to see medical staff because he was feeling sick.

65.    By March 22, 2015, Mr. Green could not eat or drink, was very cold, and his lips and fingers were blue. Detention officers at the jail ignored Mr. Green's obvious illness.

66.    On March 23, 2015, Mr. Green was unable to get up on his own. Another inmate attempted to request medical attention for Mr. Green, but no one came to help him.

67.    The following day, after repeated requests from other inmates to get medical help for Mr. Green, a detention officer came in and kicked Mr. Green several times to try and awake him. He was finally taken to the jail's medical staff, but it was too late, and Mr. Green was pronounced dead.

68.    On July 12, 2019, Defendant Harris County settled with Mr. Green's estate for $2.5 million. Despite this settlement and the obvious misconduct of jail staff, Harris County did not discipline any of the officers involved.

### MICHAEL ALANIZ

69.    On October 24, 2015, Michael Alaniz was an inmate at Harris County Jail when he was completely stripped of his clothing in the view of 50 other detainees, then beaten by detention officers without provocation to the point where he lost consciousness.

70.    On September 14, 2018, Defendants Harris County and the Harris County Sheriff's Office paid Mr. Alaniz $60,000 in a settlement. Despite this settlement and the obvious misconduct, Harris County failed to discipline any of the involved officers.

### ADAEL GONZALEZ GARCIA

71. On November 23, 2022, Adael Gonzalez Garcia was booked into Harris County Prison.

72. Two days later, while being escorted back to his cell from medical, Garcia was involved in an altercation with a corrections officer.

73. The corrections officer proceeded to beat Garcia so badly, he ended up in a coma.

### OVERCROWDING AND UNAVAILABILITY OF MEDICAL CARE

74. Through 2021 and into 2022, prison overcrowding has become a major issue in Harris County with population levels reaching close to capacity of 10,000.

75. As a result of the increased population, inmates have delayed or no access to medicine or medical care.

76. This has led to 2022 being the deadliest year in Harris County Jail's history with more than 24 in-custody deaths.

77. Many of these deaths were avoidable had prompt medical care been available to inmates. For example, 35-year-old Bryan Johnson died on October 1st after complaining of chest pains and not being taken to the hospital. Additionally, Victoria Simon was 42 years old when she was found dead in a Harris County jail cell. Ms. Simon had been booked on September 29th. There are no public records that Ms. Simon received any medical visits or treatment between the time she entered the jail and her death.

78. The delays in Harris County Jail resulted in a notice of non-compliance by the Texas Commission on Jail Standards due to 64 inmates spending more than 48 hours in intake.

## <u>WRONGFUL DEATH ACTION</u>

79. Plaintiff, Larohnda Biggles, as administratrix of the estate of Jaquaree Simmons, deceased, hereby brings her claims pursuant to the Texas Wrongful Death Statute, Tex. Code Ann. § 71.004, on behalf of all those persons entitled by law to recover damages as a result of the wrongful death of Jaquaree Simmons.

80. No other action has been brought to recover for Jaquaree Simmons' death under the aforementioned statute.

81. It is believed and therefore averred that Jaquaree Simmons' wrongful death beneficiaries are his mother and father.

82. Plaintiff claims all available damages under the Texas Wrongful Death Statute for financial contributions and the loss of future services, support, society, comfort, affection, guidance, tutelage, and contributions that the Plaintiff's decedent, Jaquaree Simmons, would have

rendered to the wrongful death beneficiaries but for his traumatic, untimely, and unnatural death occurring as a result of the excessive force, failure to intervene, and deliberate indifference to a serious medical need which are the subjects to the present litigation.

83.    Plaintiff claims all damages for medical bills and/or expenses.

84.    Plaintiff claims damages for payment of funeral and burial expenses.

## SURVIVAL ACTION

85.    Plaintiff also brings her claims as a survival action under the Tex. Code Ann. § 71.021, for all damages recoverable under the Statute, including but not limited to, loss of income, both past and future income potential, as well as pain and suffering prior to death, and for the emotional distress suffered by Plaintiff's decedent, Jaquaree Simmons, from the initiation of the excessive force against him to his death.

## COUNT I: FOURTEENTH AMENDMENT VIOLATION
## EXCESSIVE FORCE ON A PRETRIAL DETAINEE
*Plaintiff v. Defendants Barrett, Brummett, Dixon, Mallety, Martinez, Morales, Alfredo Rodriguez, Daniel Rodriguez, Westmoreland, Barrera, McFarland, Tamayo, Walker, Galindez, Villaloboz, Ramirez, and John Doe Detention Guards 1-10*

86.    Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

87.    Defendants, Barrett, Brummett, Dixon, Mallety, Martinez, Morales, Alfredo Rodriguez, Daniel Rodriguez, Westmoreland, Barrera, McFarland, Tamayo, Walker, Galindez, Villaloboz, Ramirez, and John Doe Detention Guards 1-10 beat Jaquaree Simmons, kicked him, punched him, struck him directly in the face, and slammed his head onto the ground, and failed to obtain necessary and timely medical care, all contributing to his untimely and unnatural death.

88.    The actions of Defendants were intentional, objectively unreasonable, and were not rationally related to any legitimate non-punitive governmental purpose.

89.    As a result of the actions of Defendants, Jaquaree Simmons suffered mental anguish, extreme pain, agony, and ultimately death.

90.     Plaintiff seeks survival damages, as stated above, including for the nature and extent of Decedent's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as all available wrongful death damages available under law.

**WHEREFORE**, Plaintiff demands judgement in her favor, and against Defendants pursuant to 42 U.S.C. § 1983, in an amount in excess of One Million Dollars ($1,000,000.00), including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, punitive and exemplary damages as provided by law, attorneys' fees under U.S.C. 1985 and 1988, and any other remedies legally appropriate.

## COUNT II: FOURTEENTH AMENDMENT VIOLATION
## FAILURE TO INTERVENE AND BYSTANDER LIABILITY

*Plaintiff v. Defendants Barrett, Brummett, Dixon, Mallety, Martinez, Morales, Alfredo Rodriguez, Daniel Rodriguez, Westmoreland, Barrera, McFarland, Tamayo, Walker, Galindez, Villaloboz, Ramirez, and John Doe Detention Guards 1-10*

91.     Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

92.     Defendants Barrett, Brummett, Dixon, Mallety, Martinez, Morales, Alfredo Rodriguez, Daniel Rodriguez, Westmoreland, Barrera, McFarland, Tamayo, Walker, Galindez, Villaloboz, Ramirez, and John Doe Detention Guards 1-10 stood by and watched as their fellow detention officers beat Jaquaree Simmons, kicked him, punched him, struck him directly in the face, and slammed his head onto the ground, and failed to obtain necessary and timely medical care, all contributing to his untimely and unnatural death.

93.     Defendants had a reasonable opportunity and were in a position to realistically intercede to prevent the unconstitutional and ultimately deadly beating of Jaquaree Simmons, but did not and allowed it to occur.

94.     The actions of Defendants were intentional, objectively unreasonable, and were not rationally related to any legitimate non-punitive governmental purpose.

95.     As a result of the actions of Defendants, Jaquaree Simmons suffered mental anguish, extreme pain, agony, and ultimately death.

96.     Plaintiff seeks survival damages, as stated above, including for the nature and extent of Decedent's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as all available wrongful death damages available under law.

    **WHEREFORE**, Plaintiff demands judgement in her favor, and against Defendants pursuant to 42 U.S.C. § 1983, in an amount in excess of One Million Dollars ($1,000,000.00), including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, punitive and exemplary damages as provided by law, attorneys' fees under U.S.C. 1985 and 1988, and any other remedies legally appropriate.

## COUNT III: VIOLATION OF THE FOURTEENTH AMENDMENT
## DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED
*Plaintiff v. Dr. Kelvin Shephard, Juana Patel, and John Doe Detention Officers 1-2*

97.     Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

98.     Defendants Dr. Kelvin Shephard and Juana Patel were all tasked with assessing Jaquaree Simmons' health after he was subject to two brutal attacks.

99.     During that assessment, Defendants Dr. Shephard and Nurse Patel acknowledged that Jaquaree Simmons was in obvious and immediate medical distress by ordering an X-Ray for Jaquaree.

100.    However, Dr. Shephard and Nurse Patel, and John Doe Officers 1-10 disregarded Jaquaree Simmons' obvious and immediate medical distress by sending him back to his cell despite his condition, failing to immediately send him to an outside medical provider, and failing to bring Jaqaree back for an X-Ray when the jail's power turned back on.

101.    Defendants, John Doe Detention Officers 1-2, were tasked with performing a wellness check on Jaquaree Simmons on the morning of February 17, 2021.

102.     Defendants, John Doe Detention Officers 1-2, noticed and openly acknowledged Jaquaree Simmons' obvious and immediate medical needs, including his labored and raspy breathing during the wellness check.

103.     However, Defendants, John Doe Detention Officers 1-2, did not take any steps to provide Jaquaree with medical treatment, transfer him to jail medical staff, or document his obvious and immediate medical needs in any way.

104.     As a result of the actions and/or omissions of Dr. Shephard, Nurse Patel, and John Doe Detention Officers 1-2, Jaquaree Simmons suffered mental anguish, extreme pain and agony, and ultimately died.

       **WHEREFORE**, Plaintiff demands judgement in her favor, and against Defendants pursuant to 42 U.S.C. § 1983, in an amount in excess of One Million Dollars ($1,000,000.00), including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, punitive and exemplary damages as provided by law, attorneys' fees under U.S.C. 1985 and 1988, and any other remedies legally appropriate.

## COUNT IV: MUNICIPAL LIABILITY
### *Plaintiff v. Defendants Harris County*

105.     Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

106.     Defendants, Harris County, have failed to implement and enforce sufficient policies and training related to:

   a.   The use of excessive force on inmates;

   b.   Documentation of using excessive force on inmates;

   c.   De-escalation techniques for detention officers;

   d.   The limits of legal authority for detention officers;

   e.   Identification and response to inmate health crises;

   f.   Providing medical care to acutely injured inmates;

  g. Documentations of medical treatment for pretrial detainees;

  h. The legal responsibilities of detention officers;

  i. Keeping inmates' cells habitable with proper cleaning and clothing;

107. Defendants' lack of sufficient enforcement of policies and training is clear from the longstanding history of excessive force and deliberate indifference to the medical needs of inmates, as detailed in paragraphs in the preceding paragraphs of the instant Complaint.

108. As a result of the lack of policies and training by Harris County and Harris County Sheriff's Office, detention officers and medical staff at Harris County Jail are woefully unequipped to handle these situations and are ignorant of their legal limits and responsibilities.

109. Defendants' lack of sufficient policies, training, and enforcement were a moving force behind the deprivation of Jaquaree Simmons' constitutional rights, his injuries, and ultimately his death.

  **WHEREFORE**, Plaintiff demands judgement in her favor, and against Defendants pursuant to 42 U.S.C. § 1983, in an amount in excess of One Million Dollars ($1,000,000.00), including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, punitive and exemplary damages as provided by law, attorneys' fees under U.S.C. 1985 and 1988, and any other remedies legally appropriate.


Respectfully submitted,

/s/ John J. Coyle
John J. Coyle         Daniel Cienfuegos, Jr.
MCELDREW PURTELL       AK LAW FIRM
123 S. Broad St., Suite 2250     3501 Allen Parkway
Philadelphia, PA 19109      Houston, TX 77019
215-545-8800         832-699-5559