IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LARHONDA BIGGLES, | § § | |
| Plaintiff, | § § | Civil Action No. 4:22-cv-03326 |
| v. | § § | Judge Charles Eskridge |
| HARRIS COUNTY, TEXAS, et al., | § § | |
| Defendants. | § § | |

**MOTION FOR PARTIAL LIFTING OF STAY
TO PERMIT THE TAKING OF LIMITED DISCOVERY**

Pursuant to Federal Rule of Civil Procedure 16, Plaintiff LaRhonda Biggles, through her undersigned counsel, Loevy & Loevy, respectfully moves the Court for a partial lifting of stay in this case, *see* ECF 82, in order to permit the taking of the following limited discovery: (1) Rule 34 request for production of documents generated by the Harris County Sheriff's office in its administrative investigation regarding the death of Jaquaree Simmons; and (2) discovery germane to Plaintiff's allegations made pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), *see* First Amended Complaint, ECF 51 ¶¶ 47-78.  This *Monell* discovery would not include discovery relating to death of Jaquaree Simmons.

The Court entered the stay set out in ECF 82 on the motion of several jail-guard defendants, who had sought the stay to protect their Fifth Amendment rights against self-incrimination after criminal investigations were opened into the death of Jaquaree Simmons, the decedent in this case.

Pursuant to Local Rule 7.1(D), Plaintiff certifies that she has consulted with the individual defendants in this case, who have informed Plaintiff that they do not oppose this

motion. Counsel for the Harris County defendants, however, has informed Plaintiff counsel that those defendants (Harris County, the Harris County Sheriff's Office, and Harris County Sheriff Ed Gonzalez) do oppose the lifting of the stay. On March 22, 2024, Plaintiff counsel held a telephone conference with counsel for the Harris County defendants to discuss their reasons for opposition. Plaintiff addresses Harris County's grounds for opposition at the conclusion of this memorandum. As Plaintiff explains herein, the Harris County defendants' opposition lacks merit. The Court should permit the limited discovery sought by Plaintiff to commence without further delay.

## INTRODUCTION

This case arises from the death of Jaquaree Simmons, who died after he was beaten by multiple guards and then ignored despite his obvious need for medical attention. There are open state and federal criminal investigations into Jaquaree's death, and so far one guard has been indicted. In light of those open investigations, several guards made an unopposed request for a stay in this case. The Court granted those motions in March 2023, one year ago.

Over the last year, little evident progress has been made in the criminal matters. There is still no trial set in the one criminal case that has been filed so far, and Plaintiff is aware of no news regarding the federal and state investigations. As such, this civil case remains frozen, indefinitely. That works an inevitable prejudice to Plaintiff and to the public interest, as memories invariably fade, documents are destroyed or lost, and witnesses become unavailable. This prejudice will only compound as time goes on.

This state of affairs does not have to continue, however. Substantial evidence can be gathered in this case while still protecting the Fifth Amendment rights of those individual defendants who face criminal exposure. In her motion, Plaintiff proposes to do just that. Specifically, Plaintiff proposes to begin *Monell* discovery in this case. This proposed discovery,

2

which Plaintiff describes herein, can be taken while still protecting the Fifth Amendment rights of the individual defendants.  None of the discovery that Plaintiff proposes would be taken from any of the individual defendants who face criminal exposure for Jaquaree's death, and thus none of the discovery plaintiff proposes would present any of those defendants with the "dilemma" that Fifth Amendment stays are designed to guard against.  At the same time, a resumption of tailored discovery will permit fact gathering that will occur in this case in any event, while the Court and the parties wait for the criminal process to resolve.  Courts routinely permit tailored discovery in precisely these circumstances.  The Court should do so here.

## BACKGROUND

Jaquaree Simmons was a 23-year-old resident of Houston.  He was diminutive, standing 5'4" tall.  At the time of his death, he weighed 120 pounds.  On February 10, 2021, Jaquaree was arrested by police and brought to the Harris County jail for detention.  Pursuant to COVID-19 quarantine protocols in effect at the time, he was held in a single-occupancy cell for his first ten days at the jail.

Six days after his arrest, on the morning of February 16, Jaquaree apparently flooded his cell.  In response multiple guards arrived at his cell door. The guards ostensibly came to clean the cell, but they beat Jaquaree and then stripped him naked. That same evening, Jaquaree apparently shoved his meal tray at a guard. That guard punched Jaquaree in the face and summoned other guards. Multiple guards came, ostensibly to remove Jaquaree from his cell and take him to be evaluated at a medical unit for the first guard's punch, but they entered Jaquaree's cell and began beating him. One of the guards, a 260-pound, 6'5" man named Eric Morales, kneed Jaquaree in the head, slammed his head against a door, and dropped Jaquaree head-first onto the jail's concrete floor.

Someone did eventually take Jaquaree to the medical unit, where doctors noted injuries to his head and ordered an x-ray as soon as power was restored to the jail (the lights were out due to an ice storm). Jaquaree was sent back to his cell, but he was not monitored as the jail's written policies required, and he was never taken back for an x-ray, even after power was restored. Jaquaree was found unresponsive in his cell when lunch was being handed out around noon the next day, and he was declared dead shortly thereafter.

In May 2021, the Harris County coroner issued an autopsy report concluding that Jaquaree had died of blunt force trauma to the head, and classified his death as a homicide. Shortly thereafter, the Sheriff's Office issued a public message in which it announced that it had conducted a 3-month administrative investigation into Jaquaree's death, after which it had fired 11 guards and suspended 6 others.[1]

On September 28, 2022, Plaintiff brought the present action, naming as defendants each of the 17 correctional officers whose discipline was announced in the Sheriff's May 2021 press release. The complaint also named two medical practitioners who had seen Jaquaree and ordered his x-rays (but failed, the complaint alleged, to refer Jaquaree for imaging at an outside hospital), along with Sheriff Ed Gonzalez, the Harris County Sheriff's Office, and Harris County.

The claims against Gonzalez, the Sheriff's Office, and Harris County did not stem from direct involvement in Jaquaree's death. Instead, the complaint alleged that there are widespread practices within the Harris County jail of excessive force and medical neglect to which Sheriff Gonzalez, as a supervisor, and the Sheriff's Office and the County, as municipal entities, were indifferent. These claims, sounding in the liability doctrines established in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), were supported by allegations of other improper

---

[1] A copy of the public message is attached hereto as **Exhibit 1**.

instances in which guards used excessive force against *other* detainees, as well as a 2009 report issued by the U.S. Department of Justice that documented a widespread use of excessive force within the jail.

On February 2, 2023, one of the guards—Eric Morales—was indicted and charged by the Harris County District Attorney with manslaughter for killing Jaquaree. On February 13, 2023, it was announced that the Houston field office of the FBI was opening a criminal investigation into the deaths of Jaquaree and another Harris County detainee. On March 9, 2023, several other guard-defendants in this case (Patricia Brummett, Jeremy McFarland, and Daniel Rodriguez) moved to stay this entire case, on grounds criminal investigation (by the FBI and the Harris County District Attorney) into Jaquaree's death exposed them to potential criminal charges, and that proceeding with discovery in this case would implicate their Fifth Amendment rights against self-incrimination. *See* ECF 77, 78, 79.

Plaintiff had different counsel at the time, and those attorneys did not oppose the request for a complete stay, or seek to move forward with discovery in any part of the case. On March 16, 2023, this Court granted the guard defendants' unopposed motion, ECF 82, and the case has remained stayed in its entirety since that date. As of the filing of this motion, there does not appear to be a trial date for Mr. Morales, and Plaintiff is unaware of any developments related to investigations by the FBI or the Harris County District Attorney Jaquaree's death.

On December 7, 2023, Plaintiff filed a motion with this Court to replace her existing counsel in this case with the undersigned. ECF 96. On February 14, 2024, the undersigned counsel contacted counsel for the defendants to determine whether the defendants would consent to a motion seeking to re-open this case for the singular purpose of taking discovery focused on Plaintiff's *Monell* widespread-practice claims. Plaintiff provided a copy of Plaintiff's motion,

5

proposed order, and a draft of the instant memorandum in support. After consultation and modification of Plaintiff's proposed relief, counsel for all of the individual defendants informed Plaintiff by March 20, 2024 that they do not oppose Plaintiff's motion.

On March 21, counsel for the County Defendants (Harris County, the Harris County Sheriff's Office, and Sheriff Ed Gonzalez) responded to Plaintiff for the first time and informed Plaintiff that the County Defendants did oppose Plaintiff's requested relief. Plaintiff arranged a telephone conference with counsel for the County Defendants on March 22. At that conference, defense counsel explained that the County Defendants opposed proceeding with *Monell* discovery while the individual defendants "sit on the sidelines." Defense counsel also objected that *Monell* discovery would be "one-sided," though Plaintiff counsel assured defense counsel that under Plaintiff's proposal, the County Defendants would be free to take *Monell* discovery themselves. Plaintiff counsel inquired whether the County Defendants would agree to Plaintiff's request for relief if Plaintiff were to make modifications. Defense counsel responded that the County Defendants would not agree to a modified request for relief, either. This motion follows.

## DISCUSSION

Through her motion, Plaintiff seeks leave to open discovery going to her widespread-practice claims sounding in *Monell* (and supervisory liability), while preserving the Fifth Amendment rights of the guard-defendants in light of the actual or potential criminal proceedings against them.

### A.   Current request for relief.

Plaintiff proposes to begin gathering the following discovery relating to her *Monell* claims: ***first***, Plaintiff would gather the documents gathered and generated in the Sheriff's administrative investigation of Jaquaree's death. ***Second***, Plaintiff would take discovery from the *Monell* defendants regarding *other* incidents similar to the events surrounding Jaquaree's

6

death. ***Third***, Plaintiff would take discovery from the *Monell* defendants regarding policymakers' response to these other incidents and their policies relating to supervision and oversight with respect to the jail's operations generally. Plaintiff does *not* propose in this motion to take discovery, in any form, from the 17 individual guards whom Plaintiff has alleged were involved in Jaquaree's death, and, besides documents generated by the Sheriff's completed administrative investigation, Plaintiff does not propose to take discovery about the circumstances of Jaquaree's death from other defendants or third parties.

      **B.**      **Legal standard.**

Even though a criminal defendant's Fifth Amendment rights might be implicated, there is "no general constitutional, statutory, or common law prohibition against the prosecution of parallel criminal and civil actions, even where such actions proceed simultaneously." *Tuttle v. City of Houston*, No. 4:21-cv-270, 2021 WL 2641439, at *3 (S.D. Tex. June 9, 2021) (quotation omitted). Instead, stays of civil litigation due to a pending criminal matter are "within the trial court's wide discretion to control the course of litigation, which includes authority to control the scope and pace of discovery." *Dominguez v. Hartford Fin. Servs. Grp., Inc.*, 530 F. Supp. 2d 902, 905 (S.D. Tex. 2008). In exercising that discretion, courts are mindful that "there is a strong presumption in favor of discovery," *U.S. ex rel. Gonzalez v. Fresenius Med. Care N. Am.*, 571 F. Supp. 2d 758, 761 (W.D. Tex. 2008). "[I]t is the rule, rather than the exception[,] that civil and criminal cases proceed together," *id.* (quotation omitted), such that a "complete stay of a pending civil action until the conclusion of a related criminal proceeding is considered to be an extraordinary remedy." *Alcala v. Texas Webb Cnty.*, 625 F. Supp. 2d 391, 396 (S.D. Tex. 2009) (quotations omitted, brackets adopted).

To the extent possible, stays should be narrowly tailored to protect the Fifth Amendment interests at issue while otherwise allowing discovery to move forward. *See Alcala*, 625 F. Supp.

7

2d at 397 (noting that a "complete stay" of civil litigation "is tantamount to a defendant's 'blanket assertion' of the Fifth Amendment" over all aspects of a civil case, and is to be discouraged in favor of a "particularized inquiry" by the court regarding "each specific area that the [discovering] party seeks to explore"). *Cf. Tuttle*, 2021 WL 2641439, at *4 (issuing "narrowly tailored stay limited to the Indicted Defendants would achieve the necessary Fifth Amendment protections."). In exercising their discretion to issue, tailor, and maintain such stays, courts consider the following factors:

> (1) the extent to which the issues in the criminal case overlap with those to be decided in the civil case; (2) the status of the case, including whether there has been an indictment; (3) the interests of the plaintiff in proceeding expeditiously weighed against the prejudice of to plaintiff caused by the delay; (4) the interests of the defendants; (5) the interest of the courts; and (6) the public interest.

*Holden Roofing, Inc. v. All States Roofing, Inc.*, No. CIV A H-06-3406, 2007 WL 1173634, at *1 (S.D. Tex. Apr. 18, 2007) (citation omitted).

### C. Factors governing the Court's Fifth Amendment stay.

In this section, Plaintiff reviews each of the six factors governing "Fifth Amendment" stays of civil litigation. *See Holden Roofing, Inc.*, *supra*. As set forth herein, each of the factors favors the resumption of tailored discovery that protects the Fifth Amendment interests of the individual defendants while permitting Plaintiff to gather *Monell* discovery and thereby permitting mitigating the prejudice to Plaintiff caused by the passage of time and the resulting delay and loss of evidence resulting from the ongoing stay.

#### 1. The extent to which the issues in the criminal case overlap with those to be decided in the civil case.

"The overlap of issues in a criminal case and civil case is the most important factor in determining whether to grant a stay." *Reed-Veal v. Encinia*, No. CV H-15-2232, 2016 WL 6915963, at *2 (S.D. Tex. Apr. 21, 2016). While the *fact* of overlap is relevant to this

consideration, the ultimate focus of a court's "overlap" is on the actual impact that a stay (or continued discovery) will have on a civil litigant's Fifth Amendment interests. In particular, "[w]hen evaluating [the 'overlap'] factor, courts should consider 'whether, by allowing the civil case to continue, the defendant can effectively defend the civil lawsuit without being pressured into waiving his Fifth Amendment rights.'" *Reed-Veal*, 2016 WL 6915963, at *2. This is "a common-sense, fact-bound analysis," *Cazaubon v. MR Precious Metals, LLC*, No. 14–2241, 2015 WL 4937888, at *3 (E.D. La. Aug. 17, 2015) (quotation omitted), which focuses on the practical implications of permitting certain discovery to move forward. *See, e.g.*, *id.* (analyzing implications of particular parts of civil discovery for particular aspects of parallel criminal case).

In the present motion, Plaintiff does not seek to disturb the Fifth Amendment interests of those individual defendants who have sought a stay because of pending criminal matters against them, or any of the other guards whom Plaintiff has named as defendants in this case. Rather, Plaintiff seeks to take discovery from the *municipal* defendants in this case. That discovery will focus on *other* incidents at the jail, not the circumstances surrounding Jaquaree's death. Plaintiff has alleged that there were widespread practices at the jail involving the use of excessive force and the provision of inadequate medical care to which the municipal defendants—the Sheriff's Office, the County, and Sheriff Gonzalez—were indifferent. Under doctrines governing both *Monell* and supervisory liability, proving these allegations requires showing a pattern of *other* incidents *in addition* to the incident giving rise to the action. *See Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002) (explaining with respect to a *Monell* "custom" claim that "one act is not itself a custom" and "[t]here must be a persistent and widespread practice" of unlawful conduct) (internal quotation marks and footnote omitted)); *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) ("If actions of city employees are to be used to prove a custom for

which the municipality is liable [under *Monell*], those actions must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees."); *Harrold v. Burrows*, No. CIV.A. G-13-395, 2014 WL 1760911, at *4 (S.D. Tex. May 1, 2014) (noting, with respect to supervisory liability, that "the Court of Appeals has repeatedly 'stressed that an single incident is usually insufficient to demonstrate deliberate indifference.'" (quoting *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 382–83 (5th Cir. 2005)).

In order to prove up her *Monell* and supervisory liability claims against the Sheriff's Office, the County, and Sheriff Gonzalez, Plaintiff will need to gather and introduce such widespread practice evidence in this case. By definition, this evidence does not concern the conduct of the individual guard defendants or medical staff toward Jaquaree at all, but rather concerns *other* cases in which jail employees violated the rights of *other* detainees. The Fifth Amendment interests of the individual guard defendants, which animated their request for a stay in this case, are simply not implicated in gathering that discovery: Plaintiff does not seek to resume discovery in any form from the guard defendants, and Plaintiff's discovery will be focused on *other* incidents involving *other* detainees.

In such circumstances, courts routinely permit discovery to move forward in a civil case, and simply cordon off from discovery those particular areas that generate Fifth Amendment dilemmas for a civil litigant. *See Reed-Veal*, 2016 WL 6915963, at *3 (concluding that a partial stay was appropriate to allow the indicted defendant "to defend the civil lawsuit without being pressured into waiving his Fifth Amendment rights," while also letting the plaintiff move forward in discovery against the non-indicted defendants and third parties); *Tuttle*, 2021 WL

10

2641439, at *6 (noting that "a narrowly tailored stay to protect the Indicted Defendants' Fifth Amendment privileges, coupled with a protective order, would . . . avoid undue interference with the pending criminal proceedings."). That is particularly so with respect to Section 1983 actions involving *Monell* claims, like this one. In *Martinez v. City of New York*, No. 23-cv-6303, 2023 WL 6877906 (S.D.N.Y. Oct. 18, 2023), for example, the plaintiff had brought both individual and *Monell* claims arising from an event in which a guard beat a detainee. *Id.* at *1. After the guard was indicted for the same alleged beating, all the defendants sought to stay discovery. *Id.* The Court noted that "[t]here is no dispute that there is substantial overlap between the civil and criminal cases," which counseled in favor of staying civil discovery against the indicted officer. *Id.* at *2. "However," the court continued, "the [municipal *Monell* defendants] and Unindicted Officers are not required to defend themselves in parallel actions, and the allegations Plaintiff asserts against the [*Monell* defendants] that give rise to *Monell* liability and negligent training claims are not implicated in the criminal action." *Id.* As such, the *Martinez* court held, the "overlap" factor "weighs in favor of a stay with respect to the Indicted Officers but not as to the claims against the Unindicted Officers [or the *Monell* defendants]." *Id.*

In this case, Plaintiff is proposing to give an even wider berth to the underling incident than the court did in *Martinez*. While *Martinez* permitted discovery to proceed against non-indicted individual defendants, Plaintiff does not seek in this motion to re-open discovery against any of the individuals whom she has alleged had a direct role in Jaquaree's death, whether or not they have been indicted or have moved for a stay in light of potential criminal exposure. The discovery Plaintiff proposes is at a considerable remove from the Fifth Amendment interests that prompted the stay of this litigation in the first place.

11

Plaintiff does propose to take production of the documents gathered and generated in the Sheriff's administrative investigation described in the Sheriff's May 2021 press conference, discussed *supra*. This discovery serves as an adjunct to restarting the *Monell* discovery animating this motion: to prove a *Monell* claim, a plaintiff must present evidence not just of *other* constitutional violations, but *similar* ones. *See Peterson v. City of Fort Worth*, 588 F.3d 838, 850–51 (5th Cir. 2009) ("[A *Monell*] plaintiff must demonstrate a pattern of abuses . . . . A pattern requires similarity and specificity; prior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." (quotations omitted, brackets accepted)). As things stand, Plaintiff's knowledge of the events leading up to Jaquaree's death comes largely from the Sheriff's May 2021 press release and press conference. That information gives a general outline of what occurred, and makes clear on no uncertain terms that the individual defendants engaged in flagrantly unlawful conduct, but it omits details that could be of great relevance to any *Monell* claim going forward. It is unclear, for example, how so many guards were assembled, whether they notified supervisors about their plan to "extract" Jaquaree from his cell, and whether Jaquaree's beating out of the view of cameras was coincidence or the result of the guards actively seeking to attack him in seclusion. Each of these questions—and of course, many others—can influence the directions *Monell* discovery might take and what sort of incident might be considered sufficiently similar to manifest a pattern of unlawful conduct. In a word, the evidence gathered as part of the Sheriff's administrative investigation is likely to help Plaintiff tailor her *Monell* discovery in this case.

A request for the documents generated in the Sheriff's investigation does, of course, concern the events leading to Jaquaree's death directly. But that does mean this discovery would jeopardize the Fifth Amendment interests animating the current stay. The documents would be

requested of and produced by the *Monell* defendants only.  The discovery does not require any of the guard defendants to make any statements whatsoever, and as such it does not generate or even risk the Fifth Amendment concerns animating Court's issuance of the stay in this case. Furthermore, while the discovery would concern Jaquaree's death directly, it would involve only production of cold records under Rule 34.  It would not require statements—from anyone— under a Rule 30 deposition, a Rule 33 interrogatory, or a Rule 36 request to admit.  There is simply no risk to Fifth Amendment rights. Courts in similar circumstances have permitted the gathering of paper discovery concerning incidents that are the subject of criminal litigation and which are otherwise subject to a stay to protect Fifth Amendment rights.  *See, e.g.*, *Chagolla v. City of Chicago*, 529 F. Supp. 2d 941, 948 (N.D. Ill. 2008) (holding, where Section 1983 plaintiff sought production of documents concerning the police encounter that gave rise to plaintiff's civil suit and criminal charges against several officers and generated a Fifth Amendment stay, that "there is no basis to believe that any of the defendants—either the individual defendants or the City—would be unfairly prejudiced by allowing [plaintiff] to obtain paper discovery from the City regarding the [individual defendant-officers'] encounter with him").

In a few words: while there is obvious overlap between this case and the pending criminal matters regarding Jaquaree's death, Plaintiff proposes to take tailored discovery that protects the Fifth Amendment rights of the individual defendants while permitting important discovery in this case to move forward without further delay.  The discovery Plaintiff seeks to take, therefore, does not overlap with the Fifth Amendment rights of the individual defendants. This factor favors a tailored lifting of the stay.

      **2.**      **The status of the case, including whether there has been an indictment.**

This factor favors a stay. Defendant Eric Morales was indicted on February 2, 2023, and has had a date for a "Pre-Trial Conference" moved twice, at the request of the defense. A copy of the docket in Mr. Morales's case is attached hereto as **Exhibit 2**. The next court hearing is set for May 2, 2024, but no trial date has been set. *Id.* With respect to the other guard defendants who face potential criminal exposure, Plaintiff is aware of no developments those cases. Notably, criminal law does not impose a deadline either: Texas has no statute of limitations for manslaughter, *see* Tex. Code Crim. Proc. Ann. art. 12.01(1)(A), and depending on the crime charged, the Federal statute of limitations runs from five years, to potentially no limit at all. *See, e.g.*, 18 U.S.C. §§ 249, 3282. Plaintiff, moreover, is aware of no news on the progress of the FBI's investigation into Jaquaree's death since it was first announced more than a year ago, or any progress into any criminal inquiry by the Harris County district attorney. Plaintiff is aware of no participant in this case who can tell the Court with any confidence with the criminal matters giving rise to the stay might conclude. The pendency of the criminal matters, in short, is indefinite. This factor favors the tailored lifting of the stay that Plaintiff has requested, as Plaintiff's request will allow discovery to commence without impacting the Fifth Amendment rights of anyone involved the events that resulted in Jaquaree's death.

      **3.**      **The interests of the plaintiff in proceeding expeditiously weighed against the prejudice of to the plaintiff caused by the delay.**

This factor strongly favors a tailored lifting of the stay in this case, as Plaintiff has requested. More than three years have passed since Jaquaree Simmons was killed by guards at the Harris County jail, yet factual discovery in this civil case to understand the reasons for his death has yet to begin—not a single document has been gathered in discovery, and not a single witness has been deposed. The passage of time has already likely inhibited Plaintiff's ability to

14

gather evidence to prove her claims. *See In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, No. CIV A H-01-3624, 2007 WL 789096, at *1 (S.D. Tex. Mar. 12, 2007) ("With the passage of time, inevitably witnesses become unavailable, memories fade, and the risk of documents being lost rises."). Indeed, while "concrete evidence of prejudice [caused by delay] is often not at hand, . . . . prejudice may fairly be presumed simply because everyone knows that memories fade[ and] evidence is lost" with the passage of time. *Hoskins v. Wainwright*, 485 F.2d 1186, 1192, 1193 (5th Cir. 1973) (quotation omitted).

Aside from the time that has passed since Jaquaree's death, this case has already been stayed for nearly a year, a period the courts have recognized to work a real and concrete prejudice via the loss of evidence. *See UNM Rainforest Innovations v. D-Link Corp.*, No. 6:20-CV-00143-ADA, 2023 WL 2706748, at *3 (W.D. Tex. Mar. 29, 2023) (observing, with respect to a proposed stay of at least one year, that "[i]n that time frame, documentary and testimonial evidence may be lost."); *Reed-Veal*, 2016 WL 6915963, at *3 (passage of one year since the incident giving rise to case weighed against a stay). As Plaintiff has noted *supra*, moreover, the current stay in this case is indefinite. A continued, blanket stay on all discovery will work compounding prejudice on Plaintiff even though it is not necessary to protect the Fifth Amendment rights of the individual defendants in this case.

Because *Monell* requires proof of numerous incidents and a municipality's policies generally, moreover, the *Monell* discovery that Plaintiff proposes to begin now will be time-consuming. *Lou v. Lopinto*, No. CV 21-80, 2022 WL 1447554, at *9 (E.D. La. Mar. 24, 2022) ("Courts addressing discovery . . . involving *Monell* claims routinely recognize that such claims often require a broad and substantial amount of discovery that would not be involved if the plaintiff had sued only the individuals directly involved in the alleged deprivation of rights given

15

the heavy burden on that claim." (citation omitted)).  That is all the more reason to begin that discovery now, while the parties and the Court wait for resolution of the of the criminal matters involving Jaquaree's death. This factor strongly favors the tailored lifting of the stay that Plaintiff proposes in this motion.

### 4. The interests of the defendants.

At the risk of repetition, Plaintiff does not seek to take any discovery from the guard defendants whose Fifth Amendment rights are at issue in the stay, and only seeks the discovery outlined above.  Plaintiff's request for tailored discovery protects the Fifth Amendment rights possessed by the people immediately involved in Jaquaree's death, as Plaintiff would not be taking discovery from any of them, in any form. *See U.S. ex rel. Gonzalez v. Fresenius Med. Care N. Am.*, 571 F. Supp. 2d 758, 764 (W.D. Tex. 2008) (court requiring defendant "to make a specific showing of the harm [Defendant] will suffer without a stay and why other methods of protecting its interests are insufficient") (*quoting United States v. Banco Cafetero Intern.,* 107 F.R.D. 361, 366 (S.D.N.Y.1985)). Thus, this factor weighs in favor of a partial lifting of stay.

### 5. The interest of the courts.

This case was filed three years ago, and discovery has been stayed for more than a year. Under this factor, the court may consider its own interests in efficient administration and judicial economy, and "prudent docket management weighs against" staying a civil action that has been pending for a lengthy period. *Fresenius Med. Care*, 571 F. Supp. 2d at 765 (quotation omitted). The Court has an interest in moving this case "to an expeditious conclusion" and allowing *Monell* discovery will best serve the interests of the court in allowing narrowed discovery to proceed that will inevitably need to occur and may take extensive time. *Id*. (quotation omitted).

### 6. The public interest.

The public has an interest in the resolution of disputes with minimal delay, and the public interest in minimal delay for civil rights cases in particular is considerable. "'It is always in the public interest to prevent the violation of a party's constitutional rights.'" *ODonnell v. Harris Cnty., Texas*, 251 F. Supp. 3d 1052, 1159 (S.D. Tex. 2017), *aff'd as modified*, 882 F.3d 528 (5th Cir. 2018); 892 F.3d 147 (5th Cir. 2018) (quoting *Simms v. District of Columbia*, 872 F. Supp. 2d 90, 105 (D.D.C. 2012)). In this case, Plaintiff has charged that the constitutional rights of Texas residents—not only Jaquaree—are routinely violated at the Harris County jail, and that these violations are widespread, occurring with regularity as a result of the indifference of policymakers responsible for protecting the safety of people detained there. The public has a strong interest in uncovering the truth about these allegations. Allowing the t discovery Plaintiff proposes here will allow the Court to perform its truth-finding function in a more expeditious manner and vindicate the public's interest in the protection of constitutional rights of Texas residents.

### D. The County defendants' opposition.

The County Defendants' opposition to Plaintiff's requested relief suffers from an obvious problem: there are no longer any Fifth Amendment interests at stake in the relief Plaintiff has requested. The individual guard defendants who face criminal exposure arising from Jaquaree's death, and it is those defendants who requested the stay to preserve their Fifth Amendment interests, and it was based on those motions—and not any request for relief by the County Defendants—that the Court issued the stay. And as Plaintiff noted at the outset of this memorandum, those same individual defendants do not oppose Plaintiff's requested relief. Thus Plaintiff's motion does not implicate any Fifth Amendment interests that the Court need protect. The County Defendants have never claimed that they face any sort of criminal exposure

17

implicating their Fifth Amendment rights, and thus it is unclear what standing they have even to contest the tailored lifting of the stay that Plaintiff proposes.

All the same, Plaintiff addresses what she understands to be the County Defendants' grounds for opposition. **First**, the County Defendants are that it would be unfair to proceed with *Monell* discovery while the individual defendants "sit on the sidelines." This argument is hard to comprehend: the individual defendants would be "on the sidelines" of *Monell* discovery even if this case were proceeding generally. That is so for the simple reality that Plaintiff set out *supra*: Plaintiff's *Monell* claims, by definition, involve *other* cases, not the event in which the individual defendants were involved. The individual defendants simply do not have a dog in the *Monell* fight (certainly their lawyers do not seem to think so) and it is difficult to comprehend how the *Monell* discovery Plaintiff seeks would be any different for Plaintiff, or for the County Defendants, if the individual defendants were "involved."

The County Defendants' **second** objection, that proceeding now will result in *Monell* discovery that is "one-sided," is frankly difficult to understand. *Monell* discovery is almost uniformly "one-sided," but that simply reflects the reality of *Monell* litigation. Widespread-practice claims like this one do not implicate the events in the underlying incident, which means there is virtually no discovery to take from the plaintiff. Instead, virtually all the evidence relating to a *Monell* claim will be in the hands of the municipality itself, or occasionally in the hands of other third parties. More to the point, the nature of this discovery will not change whether or not the individual defendants are actively involved in the case: that is because such discovery involves *other* incidents rather than the alleged conduct of the individual defendants giving rise to the suit.

The County Defendants simply have not identified valid reasons to delay discovery in this case even further. If anything, the somewhat nonsensical interests that their counsel has identified indicate that the County Defendants' real interest is in the generalized interest in delay that typically benefits defendants in cases like this one. That interest simply cannot prevail against the real and compounding prejudice that Plaintiff has and will continue to suffer from the continued delay worked by the Court's stay in this case—a delay that is entirely unnecessary to protect the Fifth Amendment interests of the individual defendants who originally sought it.

## CONCLUSION

For the reasons set forth in this memorandum, Plaintiff respectfully requests that the Court lift the administrative stay of this case to permit the limited discovery Plaintiff has requested in her motion. It is time for discovery in this case to begin.

Date:  March 25, 2024                    Respectfully submitted,

By: /s/Thomas M. Hanson
      Thomas M. Hanson
      Texas Bar No. 24068703


      /s/Stephen H. Weil
      Stephen H. Weil
      *pro hac vice*
      attorney-in-charge
      Illinois Bar No. 6291026

      Thomas Hanson
      Jonathan Loevy *pro hac vice*
      Stephen H. Weil *pro hac vice*
      (attorney-in-charge)
      Quinn Rallins *pro hac vice*
      Loevy & Loevy
      311 N. Aberdeen Street
      Chicago, IL 60607
      312-243-5900
      weil@loevy.com